Can you go to Rinder v. Meck Sharp & Dohme Corporation? Please step up and identify yourselves. My name is Kenneth Brennan, Tor Hermann Law for the appellees. Good morning, Your Honors. Ana Reyes of Williams & Connolly for the appellant. And I'm here with Will Marks of Williams & Connolly and George Sachs. Your name again? Ana Reyes. Okay. Okay, and what's the status of the case that's in the U.S. Supreme Court? Thank you, Your Honor. The Fosamax case has been fully briefed or will be fully briefed as of Friday. The argument is set for January 7th. Okay, I'm going to read just briefly something to you because when we look at this case, we're saying this is almost an oddity in this field. In this case, we have no agency decision. We are extrapolating what the FDA would do without any expertise in the subject matter, so wouldn't it be sensible to have a trial and call experts in science and medicine to get a clear view? The clear view evidence issue per wife. So that's what I'd like you to keep in mind when you're analyzing this. Very basically, I see this as one of two cases. Wife in this case is unique to any of the others because there's no agency involvement and there is no direct pharmaceutical action. So it's different than most of the cases you've both cited. And that tells us that this is unusual or unique. And then there are other reasons. Why are you guys fighting this so hard? So with that, go on. I'll just say that Mr. Brennan is a worthy adversary, so I enjoy fighting with him. All right. Proceed. Good morning, and may it please the Court. Justice Smith, I'd like to take your statement head on to start, and that is that respectfully I disagree that we do not have agency action in this case. We have repeated statements by the FDA and FDA official actions indicating its belief, its findings after a year-long study that there is no causal connection between these drugs and pancreatic cancer. First, we have the journal article in the New England Journal of Medicine, which was an official FDA statement as their expert has conceded. And you don't agree with that? Go ahead. It is an official FDA statement. There is also the FDA's rejection of the citizen's petition. The rejection of the citizen's petition is undeniably an FDA action. In the citizen's petition, in the rejection of that citizen's petition, the FDA again stated its views that there was no causal connection between the drug and pancreatic cancer. After that, we have an advisory briefing book on the succenda approval, and the labeling for succenda after the advisory briefing does not include a warning for pancreatic cancer. Again, in that advisory briefing book, the FDA stated its view after extensive independent review by its own scientists that there is no causal connection. We also have repeated new labeling for these drugs, which are official agency action, from FDA that there is no causal connection. So I respectfully, I don't agree that we don't have FDA action in this case. And the question But the FDA action that you're referring to, does the FDA ultimately say that, you know, all of this in combination is a final disposition or final position on this issue? I would say, Your Honor, to be sure, in the New England Journal of Medicine, the FDA says we've done an extensive review and we have not found evidence to believe that there is a causal connection. We're still looking at the issue. There you said it. We're still looking at the issue. So therefore, it's not a final determination. Your Honor, after the New England Journal of Medicine article and the Victoza Citizens Petition, the rejection of the Citizens Petition was a final agency action. And if I may, repeated approvals of labelings for these drugs without any reference whatsoever to pancreatic cancer, repeated labelings for different drugs in this class without any reference to pancreatic cancer, those are final agency decisions. Let's go on to the real issue in this case, and that is why do we care if a judge So there are a substantial number of cases where a judge can make a determination, especially when the underlying facts never get to a point where there's really a conflict. But where there's a true conflict, why do we care that a judge, sure, it's maybe a little easier, it's probably not that much less costly, but a factual determination would be much more binding and helpful? Your Honor, again, I'm in the position of respectfully disagreeing. Oh, I knew you would, but I didn't. At least I'm predictable. First of all, it would not be easier and it would not be binding. And the not binding is the really important part. You could get a judgment NOV. You could get a judgment NOV, but then why would you have gone through the practice of taking it to the jury in the first instance? If I may, Your Honor, we want uniformity and I'm sorry, I didn't mean to. No, no, no. I was just going to say you're correct on that point. I'll take that. Your Honor, what we want in product labeling, especially product labeling, is uniformity. It is important that physicians and patients understand what the risk of drugs are. And as important as it is not to underwarn, it is equally important not to overwarn, because you don't want patients and physicians to not have access to medicine that they should have access to to treat their problems. If we have a judge deciding the issue, then the judge can make a determination for potentially hundreds or thousands of cases. It is one determination. There is uniform application. In a multi-district court litigation like we have in California, if the issue is left for the jury, every jury can make a different determination. There would be no issue preclusion. There would be no claim preclusion. Usually that doesn't necessarily happen here in Illinois or Cook County. Usually all of one type of case like that would normally go to the same arena. You might go to the same arena, but at some point there's only so many, this is not a class action, so at some point there's only so many plaintiffs who could be in the court. And I would point out that when you're in court, the jury, if the jury is making the decision, the jury has in front of it a plaintiff who is almost always sympathetic. One plaintiff is looking at that one plaintiff and is looking at one manufacturer. That's not what the FDA does. The FDA has to assess the cost and benefits, the risk analysis for an entire population, all patients, all populations, and has information not just from one manufacturer, but from many manufacturers. So the FDA has a higher, clearer view. Judges are much better able to do and assess what the FDA would be thinking and to assess FDA's actions against a complex regulatory scheme than would be a lay jury. But would not the judge after a few cases be much more sympathetic to the pharmaceutical companies than he would be to a plaintiff because of the way the system is set up? I don't believe so, Your Honor. I think we can trust that our judges will apply the law faithfully as they routinely do. In fact, when we, stepping back for a moment, when we're looking at the YF preemption analysis, at the end of the day, what we are doing is reviewing agency statements and agency action against a complex regulatory scheme. It is the same thing that judges do every day when they are looking at agency action under the APA. This is what judges are trained to do. We do not leave this with juries. And I would just point, Your Honors, to two cases from the U.S. Supreme Court that talk about why it's important to consider which actor is better able to look at a case. And that is the Miller case where the justices looked at whether the voluntariness of a confession is a question of fact or law and determined that it was not a question of fact. And also the Markman case, which included a review of a patent claim. And the question there was what is the interpretation of a word in the patent claim? That's a very unique, isolated area. It is a unique area, but I think the analysis is the same, because what the U.S. Supreme Court was focused on in Markman was the need for uniformity and which decision maker would be best able to make the decision. And determined that in both instances, that was the judge. And directly at your question, Your Honor, you asked why is it important. It's important because uniformity unavoidably is better aided through having courts make these decisions than lay juries where there's no issue preclusion and no claim preclusion from case to case. What about the Third District's criticism of the Seventh District when they say all they do is line up what happened and wire it and they use the facts and scenario of that and they don't analyze it. So they end up getting a summary judgment without really looking into the total idea. And the Third District seemed to be more on top by the way they assessed it, saying even most of your cases say, all the cases you cited do say there should be a factual analysis. Your Honor. Just about every major case you cited says that there should be a factual analysis. So that's two questions, Your Honor. I didn't realize. Okay, let me take them one at a time. What originated from the Third District's theory? Thank you, Your Honor. I'll take both of them and I'll start with the Fosamax decision, which is a Third Circuit case I believe you're referring to. Right. The Fosamax decision cited the Seventh Circuit's decision in Mason in which the Seventh Circuit said, we are going to treat this as an issue of law, the why of preemption analysis. And the Third Circuit said, you know, that Mason court and all those other courts that have treated why of preemption as a matter of law, they were doing a summary judgment analysis and they just never told you that's what they were doing. Well, that doesn't make sense. If they were doing a summary judgment analysis, all of those courts would have given all inferences to the plaintiff, and that would be clear from the face of the decisions. None of those courts did that. None of them did that. There is no evidence in all of those decisions that they were giving inferences under a summary judgment standard to the plaintiff. All of the courts treated the question as a matter of law. And I would note, Your Honor, that after the Fosamax decision came out, the Seventh Circuit issued another decision, the Dolan decision, in which it again noted that Mason decided the question as an issue of law. The Seventh Circuit didn't say Fosamax was right, we were doing this blind summary judgment analysis and not just telling anybody. The Seventh Circuit said it's an open issue now. Our view is that the Mason court treated it as a question of law. And I think, if I may, this is a good time to point out what you asked for at the very beginning is, is that the Supreme Court is taking up this issue in a month, and so we might have more guidance from the Supreme Court soon. But I would note that the very fact that the Supreme Court took up the Fosamax decision, the Third Circuit decision, and that the Solicitor General weighed in that the Supreme Court should take it up, indicates that that ruling might not be on firm ground. And your second question, I apologize, Your Honor, but the issue with respect to the question of law, and you said all of our cases were questions of facts. I would note, Your Honor, that this is an inherently legal determination, even though there might be some ancillary factual questions involved. And the Supreme Court and courts routinely deal with questions of law where they might have to assess some factual determination. The Markman case, again, on the patent claim. The Supreme Court said, yeah, there might be contested expert testimony. Okay, courts can deal with that. That's an ancillary factual issue with what is mainly a legal determination. So that's not rare for courts to do that. Courts assess factual issues when making legal determinations all the time. They do that with personal jurisdiction analysis, with conflict of law analysis. They do that when they're reviewing hatheus corpus review in the federal court. So this is not anything new that courts aren't accustomed to. We do have a genuine issue of material facts. Your opponent has presented evidence that they would not, they would not, they would allow CBE modification. Well, Your Honor. And under our rules, when does the federal court impose a preemptive summary judgment procedure? Your Honor, I think we'll have more guidance from that with respect to the Supreme Court quickly in terms of where the issue is for the court or the jury. However, the court takes it up, whether through an evidentiary review, whether on the papers or elsewhere. The question still remains, who's the decision maker, the court or the jury? Well, you want a total victory right now rather than saying, well, let's designate the judge as the decision maker and let's wait until after evidence. You want a total victory right away. Well, I'd be doing really good in my job if I got one of those. But, yes, I would like a total victory right now. But at the end of the day, the question, the 308 question for the court is, is it a decision for the court or is it a decision for the jury? And our view is, is that it has to be the court. And if I could just go back to one more prudential issue as to why it should be the court and not the jury, Your Honors. And that is the question under Wyeth is, given a historical record, what would FDA have done with respect to labeling request change? When juries are looking at the issue under state law, let's say you have a jury trial. You're at a jury trial. Mr. Brennan is there. He's giving his opening under state law and why we failed to warn. And I get up and I talk about what I talk about. And I know, and by the way, we have this preemption defense. And the real question is, what would FDA have done? Not what plaintiffs claim should have been done. Well, the jury is going to go back to the jury room. They're going to make up their own assessment as to what they think should have happened. And they're just going to say, well, that's what FDA would have done. You're going to meld the two analyses. And what goes away is an actual analysis left alone as to what FDA would have done, aside from what the jury thinks should have happened. So this is really a threshold issue that a court should determine. And, again, courts routinely assess threshold issues before cases get to juries. All right. Thank you, Your Honors. Thank you. May it please the Court. And understand those mics are not, they're just for the taping, so speak up. Okay. Very good. Yeah, they're not mics that we hear. Good morning, Your Honors. My name is Ken Brennan. I represent the plaintiffs at police. The FDA has not reached a final decision or taken an action in this case. And for that reason, there is a question that the jury should decide. As Your Honor pointed out, there are disputes of material fact. Judge Gillespie has already made that decision. That's not on review here. The only question on review here is who's the decision maker, the judge or the jury. What I want to do, based on counsel's statements and the court's statements, is go through the evidence that was presented by the parties to demonstrate that the analysis that needs to be made is a classic analysis that jurors are equipped to make, not necessarily judges. In other words, there's no legal training necessary to make these decisions. The first piece of evidence Merck introduced or presented was this New England Journal of Medicine article. And as counsel pointed out, FDA or the article said FDA was still looking at the issue. Judge Gillespie pointed out that this article could be read either way. So when the article is presented at trial, the jury will have to decide how much weight do we give this New England Journal of Medicine article and what do we think the meaning of it is based on their view of the article and based on expert testimony that they hear. There's nothing about legal training that is going to assist in making those judgments and therefore is jury. So what you're saying is her argument that a judge is more equipped may not necessarily be because the judge is not an expert in science or medicine. Any better than other than his legal training. So that in 50 cents doesn't get you on a different bus. That's exactly right, Your Honor. And the Markman case that counsel mentioned involved construing a patent or the construction of a patent. That is something that judges have expertise in doing. It's a very narrow, even John Marshall Law School, it's a very narrow expertise area. It's a very narrow area. Very few people are equipped to do. That's exactly right. And the way to deal with it requires judicial training because it is the function of a judge to construe a legal instrument. We don't have a legal instrument here. I just want to back up to make sure the court understands, and I think it does, that there are two ways this preemption issue can arise. It can arise as it did in FOSAMAX where a CBE has been submitted and a change has been requested. And then you have FDA action on that, a decision letter saying this is our decision. That is something that distinguishes this case from FOSAMAX in the sense that this case is a stronger case for giving the issue to the jury because there is no decision letter, which one might call a legal instrument in this case because Merck never asked the FDA to give a pancreatic cancer warning. So what we're left with is making a prediction on a quintessentially factual question. What would the FDA do? What would the FDA do? That's the question. And there's no legal training that is going to assist the court in figuring out what the FDA is going to do. I also want to address the other evidence that Merck submitted. We're talking about one drug in this case, Genuvia, and counsel kept referring to these drugs, these drugs. Well, the citizen's petition that counsel mentioned and the FDA's response to it applied to a drug known as Victoza, which is in the same class, but it's certainly not the same drug. So, again, the jury will have to look at that and consider how much weight do I give the FDA's action as it pertains to a drug that's in the same class, but it's a different drug. Again, there's no specialized legal training needed to make that decision. But I want the court to understand citizen's petition involves a different drug. So, do we risk, though, the notion of different drugs, do we risk, as counsel kind of indicated, that if we give the issue to the jury that the determination with respect to the wide determination changes with every drug? Or with every court. With every court. If we run that risk, I mean, are we creating a consistent body of law or an inconsistent body of law? Sure, two points on that. Number one, you could have the same circumstance with separate judges making different decisions. For example, what we have here is in the MDL in California, the judge found preemption. And here, Judge Gillespie found it was not preemption. So, you could have different decisions whether you're talking about judges or jurors. But jurors oftentimes make the kind of decisions that could lead to different results in different cases. And that doesn't overcome the Seventh Amendment. I'll give you an example. One issue in this case is going to be whether Genuvia has the capacity to cause pancreatic cancer. The defendant is going to say, look, we're not even going to get to the issue of whether Genuvia caused my client's pancreatic cancer, because Genuvia can't cause pancreatic cancer at all. Now, that issue is going to be presented to a jury. There's never been any suggestion that an issue like that would be presented only to the court, as long as material facts are in dispute. Yet, that issue could be decided one way by one jury, another way by another jury. So, that's not an impediment, and it certainly doesn't overcome a Seventh Amendment right to a jury trial. We also have scientific evidence that the plaintiffs have presented in this case. We also have expert testimony that the plaintiffs have submitted in this case, that Genuvia does increase the risk of pancreatic cancer, and we have expert testimony that the FDA would approve, would not prohibit Merck from giving a warning about the association between pancreatic cancer and Genuvia, if a properly supported CVE was submitted. Now, again, classic functions of a jury, weigh all this evidence, how much weight to give it, how much credibility to give it. These are classic functions of a jury, and again, don't require any specialized legal training, like construing a patent might. I also want to point out to the court that preemption absolutely can create a question of fact. The United States Supreme Court, in a case called Boyle v. United Technologies, held exactly that. In that case, there was a government contractor preemption defense, that defense essentially being that government contractors can have the same immunity as the government does, provided they meet the requirements of the defense, and therefore common law claims against the government contractor are preempted. What the United States Supreme Court said in Boyle is that it is for the jury to determine the facts, which are dispositive of whether or not that defense applies. So there's absolutely no question that preemption can create a question of fact. The United States Supreme Court has told us that. Merck attempts to distinguish it only by saying that that case involved garden variety facts. I'm not sure what that means, but the fact in that case, one of the factual decisions in that case is what the government knew about the dangers inherent in the project, or the project that the government contractor was undertaking. It's not terribly different from deciding what would the FDA have done. These are just basic questions of fact. I want to make one last point. Merck pointed to Price v. Philip Morris as somehow supporting its case. I just want to point out that what the court said there was that the statute being applied to facts that are essentially undisputed, because we need not evaluate the credibility of witnesses or way conflicting testimony to determine whether the actions of the FDC have resulted in specific authorization of use by these terms, by cigarette manufacturers, we may draw our own conclusion on the issue and address it as a matter of law rather than as a matter of fact. This case is the polar opposite. We're going to have conflicting evidence. We do have conflicting evidence. We're going to have conflicting experts, and it's going to be for the jury to determine which expert is correct. And with that, I will sit down. Thank you, Your Honors. Your Honor, just three brief rebuttal points. First, it does require legal training, and here is why. Because when the clear evidence standard is applied, is applied against what FDA would have done. What FDA would have done in applying the FDA's regulatory framework, in applying 21 CFR 201, it would have done is there reasonable evidence of a causal connection, is there some basis to believe there's a causal connection. And those aren't just the only two regulations that are at issue. Those are the same things that the third district criticized when they said operative language of the CBE regs is reasonably evident of a casual association. And this requires law and fact application of that sort that courts routinely give to juries in tort cases. And this is quoting the FDA. So that's not 100% accurate. Well, I think what I just said is accurate. I think the Third Circuit and I have a disagreement as to what that means, which is who is better positioned to apply a legal standard, the clear evidence standard, as against a complex regulatory framework. I contend, we contend, that that is an issue of law, which may have some ancillary factual issues. And every court to have considered the issue, other than the Third Circuit case, which the Supreme Court granted cert on, granted cert on that it's a matter for the courts. So it's not that this is just some factual analysis, like who got hit by the car at the crosswalk. It involves reviewing agency action and applying it against a complex regulatory scheme, and that is inherently a judicial court function. See, I don't totally agree, because I could read all these manuals. I could be a federal magistrate or a federal judge. I would not consider myself qualified versus 12 jurors who would be given evidence and facts. I would think 12 minds would do better than one. Well, Your Honor, you and I are going to have to respectfully disagree on your capabilities. I think someone who is legally trained by nature has a better ability to understand federal regulations and to apply them than a lay jury, which may never have seen or even know what a federal regulation is. Secondly, the clear evidence test, as I stated, is a legal standard. With respect to the issue that judges may issue different opinions, for sure judges may issue different opinions, but it's not common where you have one issue, which is a legal issue on preemption, and what judges do do is they issue opinions that other judges can then rely on and may be precedent setting for other judges. So juries don't do that. Juries issue opinions or they issue verdicts, which may not even be admissible in the next case. The next jury may not even know what the prior jury determined. But certainly ---- But in that scenario, that would come up in a motion for J&OV, wouldn't it? If you had case law that was out there that tended to go the other way, in your motion for judgment notwithstanding, you would present that case law, or not? I don't think that you would be able to. If it was just a jury verdict, the court would not be able to take it into consideration because there would not be issue or claim preclusion because you would have different parties. So that's the nub, the rub, that's the issue, which is you don't have a basis to make the jury verdicts finding preclusive. And the California state courts in these matters and the coordinated proceeding made that point expressly, and we cited that to you in your papers. And I think that is something of great concern, where you need uniformity in product labeling. It can't be that a defendant doesn't know whether or not their claims or the plaintiff's claims are preempted because you're getting different decisions from different juries. That cannot be undertaken and reviewed by other courts. And so I would say that. And finally, I would just make the final point that there is a reason that the vast majority of cases have treated why it's preemption as legal issue. And that is because the Wyeth courts themselves treated it as a legal issue for the courts. The trial court expressly stated it was a legal issue that it would review. The Vermont Supreme Court stated that it was a legal issue. And the Supreme Court treated it as a legal issue that the Supreme Court decided. The Supreme Court didn't say this, goes back to the jury. The Supreme Court decided the issue, reviewing the facts for itself. And with that, thank you very much for your attention.